| UNITED STATES DISTRICT COURT | | SOUTHERN DISTRICT OF TEXAS |
|---|---|---|

| | | |
|---|---|---|
| In re | § § | |
| IFS Financial Corporation, et al., | § § | Civil Action H-13-1447 |
| Debtors. | § | |

| | | |
|---|---|---|
| W. Steve Smith, | § § | Appeal from the United States |
| Appellant. | § § | Bankruptcy Court Case 02-39553 |

## Opinion on Stay

1. *Introduction.*

In a bankruptcy, the trustee billed an estate about $3,500 for travel expenses to argue an appeal in New Orleans. Finding the expenses to be largely unrelated to the estate's business, the bankruptcy court disallowed much of them and removed the trustee from that case for defalcation. This removal precipitated his being replaced in his other pending cases. The trustee moved to stay his removal during the appeal, and the bankruptcy court denied it. The trustee appealed. His removal will not be stayed.

2. *Background.*

W. Steve Smith served as the trustee in IFS Financial Corporation's bankruptcy under Chapter Seven in Houston. He hired his wife, Blanche Smith, as his lawyer. In November of 2011, Blanche Smith argued an appeal in New Orleans. He billed the estate $3,486 in travel expenses – $2,121 for four nights' lodging, $900 for airfare, $245 for parking and taxis, and $220 for meals.

A creditor objected to the lodging and food expenses. Although their two children were with the couple in New Orleans, Smith did not bill for them.

Smith said the five days in New Orleans were required for preparation of his wife's oral argument. If seclusion were needed, a modest room in Houston would have supplied it. If Smith

were needed to help on the argument, he too was available in Houston.

In a hearing on April 25, 2013, Smith admitted his fees were improper. Recognizing that five days with their children in New Orleans was not rationally part of legal preparation, the bankruptcy court disallowed all but $275 for lodging and food. Because the excluded charges were a calculated attempt for a surreptitious personal benefit, implicating his fitness, the bankruptcy court removed Smith from the IFS Financial case. His removal from this case had the consequence of removing him from all of his appointments.[1] Smith at present remains on the panel of Chapter-Seven Trustees for future case appointments.

The trustee moved to stay the removal order pending his appeal, and the bankruptcy court denied it. The trustee appealed. The order should be stayed if (a) Smith is likely to succeed on the merits, (b) Smith will be irreparably injured without a stay, (c) a stay will not substantially harm others, and (d) a stay is in the public interest.[2]

3. *Likelihood of Success.*

The United States Trustee – a unit of the Justice Department – exists to supply the public through the court, debtors, and creditors with competent, disinterested trustees who will administer estates. The U.S. Trustee examines candidates and appoints those whom she selects to the panel of trustees.

This inter-branch step keeps the trustee from being the creature of either the bankruptcy, district, or appeals courts. Insubstantial removals would thwart this precaution. For the bankruptcy system to work, the court must superintend the administration of the estate. This includes the responsibility to constrain and dismiss trustees for an articulable reason. The law gives the bankruptcy court discretion to remove them.[3]

A. *Money Directly.*

Smith says his appeal is likely to succeed because – unlike other cases where the trustee was removed – his error did not harm the estate. The estate suffered no monetary loss because

---

[1] *See* 11 U.S.C. § 324 (2012).

[2] *In re* First South Savings Assoc., 820 F.2d 700, 704 (5th Cir. 1987).

[3] *In re* AFI Holding, Inc., 530 F.3d 832, 845 (9th Cir. 2008).

the bankruptcy court caught the unrelated expenses. He also emphasizes that he acquiesced in the court's reduction of these fees. Agreeing to waive a dishonest claim does not make the attempt less harmful. Actions that would have resulted in harm if not caught should be sanctionable based on their intended logical consequence. Responsible lawyers for parties in his 300-odd cases will now and always be obliged to double-check every aspect of an estate he manages as trustee, harming those estates.

Direct cash loss is not a necessary condition for a trustee's removal.

B.   *Result of Appeal.*

Smith implies that the result of the appeal his wife argued – a recovery of $50,000 – justifies his improper billing at least in part. Granting oneself an undisclosed gratuity of other people's money is being the judge of one's own case – at best.[4]

C.   *Business Judgment.*

Smith characterizes his decision to bill the estate for his personal expenses as an error in judgment, implying it was an honest mistake. Trustees may make reasonable business judgments free from judicial interference. A bankruptcy trustee's act that cannot be "attributed to any rational business purpose" may be reviewed judicially. Commonly, decisions about company operations generate company-killing losses; officers making those decisions probably erred; however, if they were disinterestedly trying, they are not directly liable.[5] On the other hand, some decisions may be good for the company but are a predicate for officer liability.

A treasurer who arranges a side transaction – a special purpose entity – for his company may be using questionable judgment, but when he accepts a direct, personal, secret "fee" from the contracting party, his acts are not merely questionable; they are in that aspect

---

[4] Fulton National Bank v. Lucille M. Tate, 363 F.2d 562, 572 (5th Cir. 1966) (applying Georgia law) ("It may be that the purchase by [the trustee] was in fact advantageous to the estate. This argument has been often advanced, and often rejected . . . . The duty of a trustee is not to accept any position or to enter into any relation or to do any act inconsistent with the interest of the beneficiary.").

[5] E. Norman Veasey, Duty of Loyalty: The Criticality of the Counselor's Role, 45 Bus. Law 2065, 2071-72 (1990). Veasey was the Chief Justice of the Delaware Supreme Court from 1992 to 2004.

categorically untethered to business or judgment.

A *trustee's* casually-careless billing for wasteful or luxurious expenses for personal enjoyment becomes functional incapacity.[6] Evil intentions are not required for the court to remove a trustee, but the bankruptcy court may consider circumstantial evidence like Smith's related decisions, for they may reflect his mis-exercise of judgment.

### D. Unsettled Law.

Smith insists that the paucity of decisions announcing standards for removing trustees under section 324 means that the law is uncertain. He is wrong. The principle is old and clear. Like all principles, this one becomes modestly complicated in its application to a specific transaction. Loyalty is not peculiar to bankruptcy law, nor to Southern Texas. No formula employed in any case in any region will obviate judgment in every case after it. The potential for ambiguity in the details does not make ambiguity in the rule.

Smith is obliged to establish that he is reasonably likely to prevail over the court's decision. He cannot. By his use of the undeveloped-jurisprudence argument he concedes his position is without authority. Parenthetically, the lack of cases is not national. The duty of loyalty, the meaning of fidelity – these things are addressed in cases from the members of the Union in contexts that vary; only the application is in question.

### 4. Irreparable injury.

Smith says his career and the estates for which he works will be harmed if he is removed as trustee now rather than after the appeal. The estates will suffer no more than they have today. He has been removed by the court, and he has been replaced in all of his cases by the U.S. Trustee. The administrative interruption for the shift of trustees has been a modest expense, especially considering assets in the estates and the gravity of the bankruptcy court's conclusions. In the few complex cases, his firm has been hired as counsel and will be able to aid the new trustee. The marginal injury – less than that entailed in the death of a trustee – has happened. Shifting again would at least double it and may require imposing it a third time.

---

[6] Resolution Trust Corporation v. Charles D. Acton, 844 F. Supp. 307, 314 (N.D. Tex. 1994) (Texas law) (citing Joy v. North, 692 F.2d 880, 886 (2d Cir. 1982) (Connecticut law)); Fulton, 363 F.2d at 572 (Georgia law).

Some immediate harm to Smith's career may have already happened. To the extent removal itself is the harm, his complaint is moot. If his complaint is about compensation, he may be paid for work that he has already done. The bankruptcy court's replacement also does not directly affect Smith's opportunity to earn fees in future cases as a trustee. As it now stands, he may remain on the panel of Chapter-Seven Trustees. The harm to Smith – whether he is replaced and however it is characterized – will flow from the facts of his decisions that are in the public record.

5. *Public Interest.*

The public pays for trustees who are trustworthy. Smith admits he attempted to bill the estate for personal recreation. Whether it was done negligently or intentionally, the public expects better. This is not to suggest that the stay should be denied because of abstract public opinion. It is a recognition that a bankruptcy trustee is a fiduciary to an identifiable group of beneficiaries, but he also holds an office of trust and profit under the United States.

Given the robust pool of alternative trustees, the public risks no further injury during the appeal.

6. *Conclusion.*

As found below, this is a case of deliberate defalcation, not debatable strategy. The loss of his human capital to himself and the bankruptcy court is unfortunate, but it is a consequence of his earlier choices.

The bankruptcy court's order removing Smith will not be stayed pending his appeal.

Signed on May 22, 2013, at Houston, Texas.

Lynn N. Hughes
United States District Judge